Estate of Francis F. Lowry, deceased. Appeal of Mary E. Lapp et al.

*Appeals—Credit given to findings of auditing judge—Domicil.*

Where the principal question before the orphans' court was one of fact, namely, the domicil of the decedent, and the auditing judge found that he had not lost his domicil of origin by residence abroad, which finding was sustained on exception by the court in banc; the appellate court will not disturb the conclusion in the absence of manifest error, there being sufficient evidence to sustain the finding and decree of the court below.

*Evidence—Depositions regularly taken and filed.*

Where depositions regularly taken are filed by order of the court they thereupon become proper evidence for either party.

Argued Oct. 4, 1897.   Appeal, No. 181, Nov. T., 1896, by Mary E. Lapp and others from the decree of O. C. Phila. Co., April T., 1894, No. 260, in distribution.   Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and POR-TER, JJ.   Affirmed.

Exceptions to adjudication.   Before PENROSE, P. J.

It appears from the record that the estate of Francis F. Lowry was distributed in accordance with an agreement entered into by all of the distributees except to the extent of $2,803.46 which, in accordance with the adjudication of the court and the agree-ment of the parties should remain with the accountant " to answer the contest between Sophia L. Warden of the one part and Mary E. Lapp, Lewis C. Lowry, Agnes Hosmer, Louisa Tatem Fallon, Anna Mary Wilson, Allen G. Oliver and Lewis Lowry Allen of the other part."

The subject-matter of the controversy which arose on distri-bution of the estate of Francis F. Lowry was whether the domi-cil of the decedent was Philadelphia or Paris.   Sophia Warden, the appellee, contending that the domicil of the decedent was at Philadelphia, and that the distribution should be made, per capita, in accordance with the laws of Pennsylvania, while Mary E. Lapp et al. appellants here contended that the domi-cil was Paris, and that distribution should be made in accord-ance with the law of the domicil per stirpes, according to the French code.

The auditing judge, PENROSE, J., found as a fact that the domicil of the decedent was at Philadelphia, and made distri-bution per capita in accordance with Pennsylvania laws, as will more fully appear from his adjudication, which was as follows:

By the adjudication of the account filed July 8, 1896, it was ordered that distribution of the balance shown by the account as modified should be made in accordance with the agreement entered into by all the distributees except to the extent of $2,803.46 which should remain with accountant " to answer the contest between Sophia L. Warden of the one part and Mary E. Lapp, Lewis C. Lowry, Agnes Hosmer, Louisa Tatem Fallon, ·

Anna Mary Wilson, Allen G. Oliver, and Lewis Lowry Allen of the other part,"—Sophia L. Warden not having been a party to the agreement under which such partial distribution was made.

Instead of making application to the auditing judge, by petition or otherwise, to decide the question as to the disposition to be made of the portion of the balance thus retained, the accountant has filed the present account, debiting itself simply with the sum mentioned, $2,803.46, as if it were not already before the court. The effect of this is to subject the amount to unnecessary costs, to increase the labors of the court, and to lead to confusion; but as no objection has been made by counsel for the parties interested, and the account has come for adjudication before the same judge who has the original account, the irregularity may be overlooked, so far at least, as no one is prejudiced by it.

The matter is however not one purely of form. An application has been made by Mr. Divine to strike from the record the deposition of going witnesses, taken September 3, 1895, under a rule entered for the purpose by counsel for the widow of the decedent, filed in the clerk's office October 22, 1895. There were two questions to be determined: marriage of the decedent and his domicil, and the purpose of the depositions was to establish the facts as to both. When they were taken, Mrs. Lowry was represented before the examiner by Mr. Gerhard, and Mr. Maxwell, Mr. Divine, and Mr. Fallon attended on behalf of the distributees, respectively, for whom they are counsel. The fact of marriage seems now to be admitted by all the parties, but the question of domicil is still an open one; and Mrs. Sophia L. Warden, whose rights are not affected, by the agreement of compromise entered into by the others, has, unquestionably, the right to use the depositions so taken, though not at her instance, for the purpose of establishing the question of domicil so far as concerned the fund embraced in the account then before the court. Depositions taken under a rule may be used by either party to the controversy, even if not filed (Bennett v. Williams, 57 Pa. 404), a fortiori when they have been filed.

The result would probably have been the same even if the question had arisen as to a new fund—the witnesses being be-

yond the reach of the court and the testimony having been reduced to writing after full opportunity to all persons interested to cross-examine: Evans v. Reed, 78 Pa. 415; Speyerer v. Bennett, 79 Pa. 445; Walbridge v. Knipper, 96 Pa. 48, but here it is the very fund itself or a portion of it, and the deposition is offered on one of the points which it was taken to establish. Under the authorities referred to, it may be used by any of the parties, and, of course, the right cannot be taken away by striking the depositions from the record. The distinction between the present case and Pepper's Est., 34 W. N. 65, cited by Mr. Divine, is very manifest.

The decedent, as appears by the adjudication referred to, died January 24, 1894, intestate, without issue, father, mother, brother or sister, leaving a widow, Rebecca L. Lowry, and nephews and nieces and great nephews and nieces, viz: (1) Mary E. Lapp, the only child of Charles Lowry, a deceased brother; (2) Lewis C. Lowry, the only child of Lewis Lowry, a deceased brother; (3) Sophia D. Warden; (4) Caroline L. Hutchins; (5) Mildred T. Herring; (6) Henrietta Herring; (7) Howard M. Herring; (8) T. W. Fletcher and J. Fletcher; (9) Mrs. A. S. Burch, Malcolm L. Herring and T. R. Herring; (10) Agnes Hosmer; (11) Louisa Tatem Fallon; (12) Anna M. Wilson; (13) Lewis Lowry Allen; and (14) Allen G. Oliver. Nos. 3, 4, 5 and 6 being children, and Nos. 8 and 9 grandchildren of Louisa L. Herring, a deceased sister—the parents of the grandchildren being respectively, Mary E. Fletcher and Malcolm L. Herring, a daughter and son who had died in her lifetime; Nos. 10 and 11 children of Mary L. Tatem, a deceased sister; and Nos. 12, 13 and 14, children and child of a deceased daughter (Amanda Allen) of Elizabeth L. Allen, a deceased sister.

He died in Paris, where he had spent many years in the latter part of his life—the question to be determined is whether he was domiciled in France or in Pennsylvania. Under the law of France, if that be the place of domicil, the widow, it is said, is entitled to more than one half of the estate, and the nephews and nieces, instead of each taking a fourteenth of the other half, as in Pennsylvania, take per stirpes, that is, Mrs. Lapp and Lewis C. Lowry each take one fifth of the portion not going to the widow, Mrs. Hosmer and Mrs. Fallon one

fifth, Anna M. Wilson, Lewis L. Allen and Allen G. Oliver one fifth, and Sophia D. Warden, Caroline L. Hutchins, Mildred T. Herring, Henrietta Herring, Howard M. Herring, T. W. Fletcher and J. Fletcher and A. S. Burch, Malcolm L. Herring and T. R. Herring one fifth of the share of Mrs. Warden, being in that case but one thirty-fifth (one seventh of one fifth) instead of one fourteenth. It was said, indeed, by Messrs. Divine and Fallon, that even in Pennsylvania, as the persons entitled are nephews and great nephews and nieces and great nieces the distribution would be made in the same manner; but this is clearly not the law. Prior to the act of 1855, nephews and nieces took to the exclusion of great nephews and nieces, and where there were no living brothers or sisters, the distribution, by express provisions of the original act (April 8, 1833, sec. 14, P. L. 315), was to be made to them in equal shares. The act of 1855 extended the representation among collaterals one degree further, so as to include grandchildren of brothers and sisters, and give to them "such shares as their parent would have taken if living." There is no suggestion of change as to the shares, and the operation of the new law is not to be extended beyond the purpose manifestly intended. If no nephew or niece had died, the distribution would be made per capita; the act of 1855 merely brings in the children of such as may have died, who previously would have been altogether excluded —and gives to them, by representation of their parent, "such share" as he would have taken but for his death, viz: a share equal to what each of the living nephews and nieces received.

The decedent was born in Philadelphia, where for many years he carried on business. He was a butcher, having a stall in the Farmers' Market, and after reaching the age of fifty, he was able to retire with an estate sufficient in size to permit him to live comfortably on its income. So far as appears he owned no real estate and his securities were placed in The Fidelity Insurance, Trust and Safe Deposit Company for safe keeping—remaining there till his death. He was childless, and sometime between 1872 and 1876 he and his then wife went to Paris, powers of attorney by which to collect his income being left with the Fidelity Company. His stay in Paris was not continuous. He was in Philadelphia during periods of greater or less duration, the longest time from about July, 1889, to August,

1890, and the last, so far as the evidence shows, in 1893. His wife died in 1890 in Paris, and he then returned with her body. She was buried in his lot in Laurel Hill.

In 1893 he married the lady who survived him as his widow. She is a French woman and the marriage took place in France. After the remarriage he again came to this country, returning to France in June, 1893. He died, as already stated, in the following January.

A change of domicil works such important consequences, both as to the status of the person and the distribution of his personal estate, that the burden of proving a change is upon the party alleging it, and this is not only under settled principles of public law, but under the fundamental rule of evidence that an established condition is presumed to continue. The presumption stands until overcome by proof and the proof must be clear and free from reasonable doubt. Mere residence in a foreign country is not, standing by itself, enough. It must appear that the residence was animo manendi, and with the intention of abandoning the former domicil. An established domicil adheres until an intention to adopt, with an actual adoption of a new one is made manifest, and this is emphatically the case where the domicil alleged to have been given up is the domicil of origin. In the leading case of Somerville v. Somerville, 5 Vesey, 750, the master of the rolls (Sir Richard Pepper Arden), said: "The third rule I shall extract is, that the original domicile, or as it is called, the forum originalis, or the domicile of origin, is to prevail until the party has not only acquired another, but has manifested and carried into execution an intention of abandoning his former domicile and taking another as his sole domicile." In Aikman v. Aikman, 3 Macq. 854, it is said by Lord Westbury: "Everyone's domicile of origin must be presumed to continue until he has acquired another sole domicile by actual residence, with the intention of abandoning his domicile of origin. This change must be animo et facto, and the burden of proof unquestionably lies on the party who asserts the change." And in the same case (page 863) it was said by Lord Cranworth: "It is a clear principle of law, that the domicile of origin continues until another domicile has been acquired, i. e. till the person whose domicile is in question has made a new home for himself in lieu of the home of his birth."

A domicil of choice, as distinguished from a domicil of origin may be abandoned by simply ceasing to reside in it with the intention of so doing, but a domicil of origin is retained until the actual acquisition animo manendi, of a new domicil.   Hence in Bell v. Kennedy, L. R. 1. Sc. App. 307, it was held that a person whose domicil of origin was Jamaica, who died in Scotland, after having resided there for a year, retained his original domicil, though he had sold his estates there and left Jamaica, as he had declared, " for good,"—it not being shown that he had at the time of his death or previously, any fixed or settled purpose to make Scotland his future home.

These principles are perfectly well settled, and they have been applied in countless cases decided in this country.   See Price v. Price, 156 Pa. 617.   Their application to the case now under consideration leads to a conclusion adverse to the claim that the estate of the decedent is to be distributed according to the law of France.   There was nothing to show that he had abandoned his Philadelphia domicil or that he had acquired a permanent residence in France.   He did not engage in business in the latter country.   So far as appears he never even became a householder there, and his remittances were made, not to him, at any fixed place or abode, but to his bankers, Drexel, Harjes & Company.   Undoubtedly, Parisian life had great attractions for him; this was shown by the testimony offered before the auditing judge by Messrs. Divine and Fallon; but this was the utmost extent that was shown, and there was not a syllable of evidence to show an intention to renounce Philadelphia as his place of domicil, though he was in constant communication with the Fidelity Company and its officers, both while abroad and in this country.

The absence of all evidence, written or oral, of any expression of an intention to abandon, or that he had abandoned Philadelphia as his permanent home, is especially significant in view of the established facts that during the whole of his absence in France, his entire estate was permitted to remain in Philadelphia ; that when his wife died, he caused her to be buried, not in France where she was at the time, but in his family lot in Laurel Hill, and that his last dying wish, as shown by a paper written at his instance, was that he too should be buried in the same place.   It is true that in Hood's Estate, 21 Pa. 106, the

desire of the decedent to be buried at the place of his domicil of origin and the fact that some of his securities were there, as well as the fact that he had an interest in business carried on there, were not regarded as important in view of the further facts that he had removed from such domicil during his minority, had engaged in business and established a permanent residence in Cuba, had changed his religion in order to become domiciled there, and always considered himself as domiciled and resident on the Island of Cuba where his fortune lay. There, there was the strongest evidence of abandonment of original domicil, and acquisition of permanent residence in Cuba, while here, evidence of similar character is wholly wanting.

But the case does not rest on the mere absence of proof of intention to abandon Philadelphia as the domicil of the decedent: there is positive uncontradicted evidence of declarations by him, shortly before his death, that he did not have such intention. Arthur E. Valois, whose testimony was taken by deposition (already referred to), was consulted in his official character (counsel for the United States Consulate General at Paris) by the decedent with reference to his contemplated marriage in 1893, the question of domicil being one of importance as affecting marital rights, etc., etc. He then stated that his domicil was Philadelphia, and after his marriage his intention was to return, after some time. This was said on various occasions to Mr. Valois. Testimony to the same effect was given by Mrs. Rosa Fernand, a sister of the widow of the decedent, to whom he said "many times" that "he never had a real residence in France, never learned to speak French; and that his residence was Philadelphia, he loved America very much." The testimony of Mr. Valois was objected to by Mr. Divine, but so far as the auditing judge can perceive, upon no substantial grounds. That he would have no direct pecuniary interest in the question before the court, is apparent; and the fact, if it be a fact, that a professional relation existed between him and the decedent, or between him and Mrs. Lowry, the widow, is not available as an objection on the part of any third person: Dowie's Estate, 135 Pa. 210.

The estate of the decedent is distributable in accordance with the laws of Pennsylvania, except so far as the parties in inter-

est have agreed to the contrary.  Mrs. Sophia D. Warden is not affected by any agreement.

A supplemental account, debiting the accountant with moneys recently remitted by Drexel, Harjes & Company to close the French account ($432.39) was presented and is hereto annexed. The costs of filing the present account will be charged against the moneys so received.

Exceptions were filed to adjudication, both upon the findings of fact and of law, which exceptions were subsequently· dismissed and the adjudication confirmed by the court in banc in an opinion by HANNA, P. J., reported 5 District Reports, 729, whereupon this appeal was taken.

*Errors assigned* were in dismissing the exceptions to the adjudication of the auditing judge, which exceptions principally turned on the findings of fact by the auditing judge that the domicil of the decedent was in Philadelphia at the time of his death.

*William S. Divine*, with him *Christopher Fallon*, for appellants.—Ordinarily, attacking the findings of fact of an auditing judge are attended with great difficulty, but the case at bar is not such a case as gives the usual weight to such findings of fact, the domicil being an inference drawn from other facts: Sweatman's Appeal, 150 Pa. 369.

The law, it is admitted, casts the burden of proof upon the party asserting the change of domicil.  But the appellants in this case did not allege a change of domicil and the law is well settled that prima facie a man is domiciled at the place of his residence at the time of his death, and it is incumbent upon those who deny it to repel the presumption of law: Guier v. O'Daniel, 1 Binney, 349, 1 American Leading Cases, 755; Ennis v. Smith (Kosciusko's Estate), 14 How. U. S. 400.

Prima facie the place of residence is the domicil until other facts established the contrary: Carey's Appeal, 75 Pa. 301; Ennis v. Smith (Kosciusko's Estate), supra.

And this rule applies not only in interstate habitation, but also where a citizen removes to a foreign country.

Where a person removes to a foreign country and settles there, the presumption in favor of domicil of origin no longer

exists and the burden of disproving the domicil of choice falls upon him who denies it: Hood's Estate, 21 Pa. 106.

*Robert D. Maxwell*, with him *Victor Guillou*, for appellee.— When a deposition is taken it ought to be and is equally the property of both parties and may be given in evidence by either: Gordon v. Little, 8 S. & R. 533; Nussear v. Arnold, 13 S. & R. 323.

OPINION BY SMITH, J., December 13, 1897:

The principal question in this case was one of fact, namely, the domicil of Francis F. Lowry at the time of his death. He was born in Philadelphia and lived to an advanced age, and during nearly all of the last twenty-five years of his life he resided in Paris, France, where he died intestate. So far as appears he never engaged in business there, and his property and business remained in charge of a trust company in Philadelphia, where he had placed it before going to Europe. Testimony touching the inquiry was submitted to the learned auditing judge, from which he found that Lowry had not lost his domicil of origin, and that, therefore, his estate should be distributed according to the laws of Pennsylvania. This finding was approved by the orphans' court and exceptions to the action of the auditing judge were dismissed. Nothing short of manifest error would warrant us in disturbing this conclusion: Galloway's Appeal, 5 Pa. Superior Ct. 272. Whether the prolonged residence of Lowry in Paris would be sufficient in itself to establish a domicil of choice in France, it is unnecessary to decide, because there was affirmative testimony plainly indicating an intention on his part to retain his citizenship and domicil here. Even if, as contended, the burden of proof was cast upon the appellees, the evidence is sufficient to sustain the finding and decree of the court below. The depositions seem to have been regularly taken under a rule, and were filed by order of the court. Thereupon they became proper evidence for either party: Bennett v. Williams, 57 Pa. 404. There is nothing further in the case calling for special notice. The specifications are dismissed and the decree is affirmed.