## Dreer Estate

*Barnes, Dechert, Price, Myers & Rhoads*, and *Duane, Morris & Heckscher*, for executor.

*Irvin Stander*, for Commonwealth.

BOLGER, J., June 19, 1959.—Decedent died July 29, 1954, in Paris, France. Her will and codicils dated June 11, 1945, April 30, 1947, November 28, 1947, and

June 16, 1948, were duly probated by the register of wills of Philadelphia County and letters testamentary were granted to Fidelity-Philadelphia Trust Company August 26, 1954.

The register of wills filed a resident inheritance tax appraisal evaluating the estate at $253,814.25 and assessed transfer inheritance tax of $38,072.14 with interest from July 21, 1955. The executor appealed from this assessment requesting that the entire tax with the exception of $531.92 representing tax on 100 shares of common stock of Philadelphia Electric Company, a Pennsylvania corporation, should be abated. The basis for the appeal is the contention that decedent was domiciled in France at the time of her death.

In her will, which is dated about nine years prior to her death, testatrix stated:

"FIRST: It is my intention to reside abroad probably for sometime, but in order that no question may arise in the event of my death as to where my will is to be probated, I hereby declare that I am a citizen of the Commonwealth of Pennsylvania, United States of America, and a legal resident of the City of Philadelphia, in which city my will should be probated."

Several depositions have been taken as well as interrogatories and cross-interrogatories, all of which have been made a part of the record. In addition to the statements contained therein, hearings were held before me and the following facts have been clearly developed.

Augusta N. Dreer was born in Philadelphia in 1855. In 1904, when she was 49 years of age, she resided with her mother in the State of California and following the death of her mother which occurred in 1907, Miss Dreer continued to reside in California until 1920 in which year she returned to Philadelphia and then traveled to Paris. In 1923 she went back to California and on her return to Philadelphia established an agency account at Fidelity-Philadelphia Trust Com-

pany in 1924. In the same year she went to Paris, France, and since then never returned to this country. After 1924 she did not leave France except to take vacation trips in southern Europe and Switzerland.

While in France after 1920, she and her sister occupied an apartment. Following her sister's death, she established quarters in the St. Regis Hotel in Paris. During the war, she appears to have resided at Vichy.

Miss Dreer at all times considered herself to be a citizen of the United States. There is nothing in the record to show that she relinquished her citizenship. Federal income tax returns were regularly filed at Philadelphia. For several years these returns were prepared by Fidelity-Philadelphia Trust Company.

The record fails to show any permanent residence in Philadelphia, in fact in the United States, subsequent to the time when she resided at Pasadena, California. With reference to her sojourn in California, an ex parte affidavit was submitted in evidence, which affidavit merely established the fact that Miss Dreer was listed in a directory at the residence of her mother and that in the probate proceedings relating to her mother's will, Miss Dreer declared that she was a resident of California. Although the Commonwealth originally objected to the affidavit, subsequently it was admitted by stipulation.

From 1904 and until 1920 the record fails to show any residence other than Pasadena, California. Following her mother's death in 1907, Miss Dreer continued to occupy her mother's home and declared California to be her residence.

Officers of the Fidelity-Philadelphia Trust Company testified at some length concerning correspondence between Miss Dreer and the bank, but none of this testimony was particularly relevant. Answers to interrogatories and cross-interrogatories were filed in the proceeding and reference is made to two of them, viz.,

Marion Mansfield Greenough and Charles A. F. Kammerer. The former is the aunt of one of the residuary legatees. This deponent stated that decedent declared that she wanted to make Paris, France, her permanent residence and that she had no wish to reside in the United States. The latter, a resident of Monte Carlo, testified in part: "She always expressed the firm wish to live forever in France and to die in France." He cited an incident which occurred more than 20 years ago in which decedent is quoted as saying in part: ". . . I could no more live in America, although I love my country, it is my wish to live and to die in France."

The Commonwealth attacks the weight of these answers to interrogatories, but has failed to introduce any contradictory statements by decedent.

In support of its legal conclusion, the Commonwealth contends that Lowry Estate, 6 Pa. Superior Ct. 143, and Obici Estate, 373 Pa. 567, are controlling; that Dorrance's Estate, 309 Pa. 151, demonstrates that the burden is on appellant in this case to prove that Miss Dreer was not domiciled in Philadelphia and finally it is contended that since Philadelphia was the domicile of her origin, there is a presumption that it continued to be her domicile until it has been conclusively proved: (a) That she abandoned her native domicile; (b) acquired a new one; (c) that she had no intention of returning to Philadelphia.

The facts of residences are admitted with the exception of some short interludes during which Miss Dreer was visiting in different parts of the United States including New York and Washington and certain intervals when she was vacationing in southern France and Switzerland.

In Dorrance's Estate, supra, the court said, page 172: ". . . It is true the burden of showing a change from a former domicile is upon the party asserting it,

but the fact of residence in a particular place is prima facie evidence of domicile."

When Augusta Dreer went to California in 1904, she acquired a domicile of choice. This is established by her continued residence in the absence of any testimony that she intended to return to Philadelphia and make it her place of permanent abode. In Obici Estate, supra, the Supreme Court held mere residence in a foreign country is not, standing by itself, enough. It must appear that the residence was animo manendi and with the intention of abandoning the former domicile. An established domicile adheres until an intention to abandon, with the actual adoption of a new one, is made manifest.

It is difficult to surmise a more direct expression of abandonment than the undenied statements of Miss Dreer, which statements were made ante litem motam, that she had no intention of ever returning to live in her native land. These statements taken in conjunction with her continued absence from the United States from 1924 until her death, during which time in two separate establishments in Paris she acquired living quarters and procured articles of household use, an automobile, and maintained her bank account, all in Paris, demonstrate the animo manendi beyond a doubt.

If a person stated unequivocally that he does not intend to return to a domicile of origin, the abandonment of that domicile is clearly established. The acquisition of a new domicile, especially in this case, has been established. I find that Paris, France, was the domicile of decedent at the time of her death.

So far as the theory of the Commonwealth of a reverter to the domicile of origin is concerned, it is unnecessary to consider it under all the facts of this case. Since, however, the Commonwealth has raised it, reference should be made to §23 of the A. L. I. Restatement of the Conflict of Laws, Comment b, as follows: "The

rule stated in this Section is equally applicable whether the last domicil was a domicil of origin, a domicil of choice or a domicil assigned by operation of law. If a domicil of choice is abandoned without acquiring a new domicil of choice, the domicil of origin is not thereby revived, but the last domicil of choice continues to be the domicil." The law thus stated has been cited with approval in Obici Estate and the conclusions of law have been enunciated in Price v. Price, 156 Pa. 617 (1893).

As above set forth, Miss Dreer stated in her will that Philadelphia was her legal residence for the purposes of probating her will. It must be borne in mind that prior to 1907, Fidelity-Philadelphia Trust Company or its then predecessor had managed her father's estate. In 1924 she opened an agency account with the Fidelity and from that time until her death all assets, investments and records pertaining to her estate have been in the possession of the same bank. It was, therefore, logical for her to desire that this bank would have charge of her testamentary estate.

By declaring Philadelphia to be her residence for probate purposes, she could not in the face of her actual acquisition of the domicile in Paris change the legal consequences which flow from such acquisition of domicile. Even if she had declared Philadelphia to be not merely her legal residence, but also her domicile, in opposition to the facts of her living and her statements concerning intentions to always remain in France, that Philadelphia was her domicile would not be controlling: Dorrance's Estate, supra.

For the reasons above set forth I hereby enter the following

### Order

And now, June 19, 1959, with the exception of the tax assessed on the Philadelphia Electric Company

stock, the appeal is sustained and the record is remanded to the office of the register of wills.